## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KALBIAN HAGERTY LLP**<br><br>    **Plaintiff,**<br><br>  **v.**<br><br>**PWT WASSER- UND ABWASSERTECHNIK GmbH,**<br><br>    **Defendant.** | **Civil Action No. 1:22-cv-00224-APM** |

**DEFENDANT PWT WASSER- UND ABWASSERTECHNIK GMBH'S MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ................................................................................................2

     A.    Underlying Dispute Between PWT and Non-Party SAMA ....................................2

     B.    PWT and Kalbian Execute a Legal Services Agreement for SAMA
            Arbitration ............................................................................................................3

     C.    SAMA's Claim is Dismissed After a Hearing on the Merits ................................5

     D.    PWT Pays All Fixed Fees Due and Disputes Kalbian's Interpretation of
            the Legal Services Agreement Regarding Contingency Fees Due ........................5

     E.    The Parties Agree to Arbitrate Their Fee Dispute ................................................6

LEGAL STANDARD ...........................................................................................................8

ARGUMENT ........................................................................................................................9

I.    The Court Should Dismiss Plaintiff's Amended Complaint Because the Parties
     Agreed Not to Resolve This Dispute in a U.S. Court .........................................................10

     A.    The Parties Agreed to Resolve This Dispute by Arbitration ................................10

          1.    The Dispute Resolution Agreement Is Valid and Enforceable................10

          2.    Any Challenge to PWT's Satisfaction of the "Condition Precedent"
               to Arbitration under the Dispute Resolution Agreement Must Also
               Be Decided in Arbitration........................................................................13

          3.    Enforcement of the Arbitration Clause is Consistent with the
               Public Interest .........................................................................................15

     B.    Alternatively, the Court Should Dismiss Because the Parties Previously
            Agreed to Resolve the Fee Dispute in the Courts of the United Arab
            Emirates ..............................................................................................................16

          1.    The UAE Clause in the Legal Services Agreement is Valid....................16

          2.    Enforcement of the UAE Clause is Consistent with the Public
                Interest ....................................................................................................18

3.      There is No Basis to Enforce The Legal Services Agreement's
        "Deems Appropriate Clause" ................................................................19

II.      The Court Should Dismiss for Lack of Personal Jurisdiction ...........................................20

III.     Request For Oral Hearing................................................................................................22

CONCLUSION .....................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abulyan*,
  BAP No. NV-18-1219, *et al.*, 2019 WL 4745282 (B.A.P. 9th Cir. Sept. 27,
  2019) ................................................................................................................. 12

*Aksman v. Greenwich Quantitative Rsch. LP*,
  563 F. Supp. 3d 139 (S.D.N.Y. 2021) ................................................................ 14

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
  571 U.S. 49 (2013) ............................................................................................ 15

*Atlantigas Corp. v. Nisource, Inc.*,
  290 F. Supp. 2d 34 (D.D.C. 2003) ...................................................................... 9

*\*Azima v. RAK Inv. Auth.*,
  926 F.3d 870 (D.C. Cir. 2019) .................................................................. 8, 15, 16

*Conopco, Inc. v. PARS Ice Cream Co.*,
  No. 13 Civ. 1083, 2013 WL 5549614 (S.D.N.Y. Sept. 26, 2013) ........................ 20

*Crane v. N.Y. Zoological Soc'y*,
  894 F.2d 454 (D.C. Cir. 1990) ............................................................................. 9

*\*D & S Consulting, Inc. v. Kingdom of Saudi Arabia*,
  961 F.3d 1209 (D.C. Cir. 2020) ................................................................. *passim*

*Dahman v. Embassy of Qatar*,
  364 F. Supp. 3d 1 (D.D.C. 2019), *aff'd*, 815 F. App'x 554 (D.C. Cir. 2020) ......... 8

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .......................................................................................... 21

*\*Gordian Grp., LLC v. Syringa Expl., Inc.*,
  168 F. Supp. 3d 575 (S.D.N.Y. 2016) ................................................................ 20

*Havens v. Hartford Fin. Servs. Grp., Inc.*,
  No. 18 Civ. 488, 2020 WL 1244235 (S.D.N.Y. Mar. 13, 2020) .......................... 14

*Haysbert v. Word*,
  No. CV 20-2152, 2021 WL 254105 (D.D.C. Jan. 25, 2021) ............................... 16

*Howard Town Ctr. Dev., LLC v. Howard Univ.*,
  278 F. Supp. 3d 333 (D.D.C. 2017) .................................................................... 12

*Kriesch v. Vilsack*,
     931 F. Supp. 2d 238 (D.D.C. 2013) ....................................................................... 11

*Marra v. Papandreou*,
     216 F.3d 1119 (D.C. Cir. 2000) ........................................................................... 16

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
     514 U.S. 52 (1995) ............................................................................................. 19

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
     473 U.S. 614 (1985) ........................................................................................... 10

*Mobile Real Est., LLC v. NewPoint Media Grp., LLC*,
     460 F. Supp. 3d 457 (S.D.N.Y. 2020) ................................................................. 13

*Morelli v. Alters*,
     No. 1:19-CV-10707, 2020 WL 1285513 (S.D.N.Y. Mar. 18, 2020) ..................... 13

*Planète Bleue Télévision, Inc. v. A&E Television Networks, LLC*,
     No. 16 CIV. 9317, 2018 WL 10579873 (S.D.N.Y. Sept. 19, 2018) ..................... 12

*Redrock Trading Partners, LLC v. Baus Mgmt. Corp.*,
     No. CV 113-043, 2014 WL 5106998 (S.D. Ga. Oct. 10, 2014) ............................ 20

*Rubin v. Sona Int'l Corp.*,
     457 F. Supp. 2d 191 (S.D.N.Y. 2006) ................................................................. 13

*Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
     647 N.E.2d 1298 (N.Y. 1995) ............................................................................. 10

*Second Amend. Found. v. U.S. Conf. of Mayors*,
     274 F.3d 521 (D.C. Cir. 2001) ............................................................................... 9

*Sylvester v. Sw. Energy Prod. Co.*,
     No. 3:CV-09-1653, 2009 WL 3633835 (M.D. Pa. Nov. 2, 2009) ......................... 12

*Terveer v. Billington*,
     34 F. Supp. 3d 100 (D.D.C. 2014) ......................................................................... 7

*Thompson Hine, LLP v. Taieb*,
     734 F.3d 1187 (D.C. Cir. 2013) .................................................................... 21, 22

*Town of Amherst v. Custom Lighting Servs., LLC*,
     No. 07-CV-261 S, 2007 WL 4264608 (W.D.N.Y. Nov. 30, 2007) ....................... 14

**Rules and Regulations**

D.D.C. L.R. 7(f) ........................................................................................................... 22

Fed. R. Civ. P. 12(b)(2) ....................................................................................................... 9

COMES NOW Defendant PWT Wasser-und Abwassertechnik GmbH ("PWT"), by and through undersigned counsel, and hereby brings this Motion to Dismiss the Amended Complaint.

## INTRODUCTION

This dispute does not belong in this forum.  PWT paid Plaintiff Kalbian Hagerty LLP ("Kalbian") $1 million in fees for the firm's representation of PWT in an International Chamber of Commerce arbitration in Istanbul concerning an infrastructure project in Iraq.  When Kalbian demanded an additional $1.37 million contingency fee and PWT disagreed with the firm's interpretation of their Legal Services Agreement, the parties signed a Dispute Resolution Agreement in which they agreed to resolve the matter by arbitration.  Three months after signing that Dispute Resolution Agreement agreeing to arbitrate, Kalbian filed suit in this forum.  The arbitration agreement should be enforced and Kalbian's complaint dismissed.

Kalbian suggests in its Amended Complaint that PWT breached the Dispute Resolution Agreement by failing to timely pay an agreed contingency fee of $200,000, an alleged condition precedent to arbitration.  But Kalbian does not and cannot contest that PWT ultimately paid the agreed contingency fee prior to Kalbian filing suit in this forum, nor does Plaintiff appear to contest that the Dispute Resolution Agreement provided that the parties would "resolve all disputes" relating to Kalbian's demand for additional fees in arbitration.  To the extent that Kalbian maintains that PWT's delayed payment did not satisfy the Dispute Resolution Agreement's "condition precedent" to arbitration, the law is clear that PWT's compliance is an issue to be resolved by an arbitrator.  Thus, dismissal is appropriate.

Alternatively, however, if the Dispute Resolution Agreement and its arbitration provision were inapplicable to this matter, the parties' prior agreement – the Legal Services Agreement – should govern.  The Legal Services Agreement has its own forum-selection clause, printed on

Kalbian letterhead, that provides that UAE, where Kalbian maintains its Middle East offices, shall be the exclusive forum for all fee disputes arising from the interpretation of the agreement. As explained in detail below, this dispute inarguably arises from conflicting interpretations of the agreement's contingency fee provision and therefore cannot be resolved in a U.S. court.

Simply put, the parties agreed not to litigate this dispute in a U.S. court. Accordingly, the parties' agreements should be enforced and the Amended Complaint should be dismissed with prejudice.

### FACTUAL BACKGROUND

Plaintiff Kalbian Hagerty LLP is a law firm with offices in Washington, D.C. and in Abu Dhabi, the United Arab Emirates ("UAE").[1]  AC ¶ 2.[2]  Defendant PWT is a German company with its principal place of business in Zwingenberg, Germany. *Id.* ¶ 3.

### A.   Underlying Dispute Between PWT and Non-Party SAMA

Plaintiff Kalbian represented Defendant PWT in an arbitration that arose out of a commercial relationship between PWT and non-party SAMA Al-Douh for General Contracting, Real Estate and Tourism Investment, Ltd. ("SAMA"). In April 2012, PWT and SAMA agreed to cooperate to design and build a water treatment plant in Samawa, Iraq (the "Project") for the Iraqi Ministry of Municipalities and Public Works ("MMPW"). AC ¶ 7.

On or about February 12, 2014, SAMA was terminated from the Project by MMPW. AC ¶ 8. Prior to the termination, SAMA failed to fulfill its obligations under the subcontract because it (i) mismanaged the Project, (ii) defectively executed the scope of work, (iii) failed to finance the Project properly, and (iii) disrupted and hindered PWT's progress on the Project. *Id.* All of that

---

[1] Allegations in the Amended Complaint are accepted as true only for purposes of this motion.

[2] Citations to "AC" are to Kalbian's Amended Complaint.

conduct resulted in considerable delays and costs to the Project that were primarily borne by PWT. *Id.* SAMA's poor performance on the Project forced PWT to terminate SAMA as a subcontractor. SAMA responded by initiating litigation in Iraqi local courts, despite an arbitration clause in the subcontract. *Id.*

Between early 2014 and March 2015, SAMA filed two separate actions in the courts of Iraq regarding its dispute with PWT. AC ¶ 9. First, SAMA sued PWT seeking damages for the expenses it incurred to maintain bank guarantees for the Project, and secured a judgment awarding it those expenses (the "First Iraq Case"). *Id.* SAMA subsequently filed a second suit seeking damages for work performed and lost profits (the "Second Iraq Case"). *Id.* The court in the Second Iraq Case awarded SAMA nothing and instead found that PWT had been damaged by SAMA's failure to perform. *Id.* When PWT initiated a collection action in Iraq, SAMA invoked the arbitration clause in the subcontract to stay the case against it. *Id.*

On or about April 1, 2018, SAMA submitted a request for arbitration to the arbitral body designated in the subcontract, the International Chamber of Commerce. AC ¶ 10. SAMA alleged, *inter alia*, that PWT wrongfully terminated the subcontract, and that SAMA was entitled to damages for (a) work performed, (b) lost profits, and (c) expenses arising from maintaining bank guarantees, all claims it had previously litigated in the First and Second Iraq Cases. *Id.*

**B.      PWT and Kalbian Execute a Legal Services Agreement for SAMA Arbitration**

On May 30, 2018, Kalbian and PWT executed a Legal Services Agreement under which Kalbian agreed to represent PWT in its arbitration with SAMA. AC ¶ 17; Legal Services Agreement, attached as Exhibit 1.[3] PWT agreed to pay Kalbian under a hybrid fee structure,

---

[3] The Legal Services Agreement was attached to Plaintiff's AC as Exhibit 1.

consisting of a fixed fee and a contingency fee.  AC ¶ 18.  As a fixed fee, PWT would pay Kalbian $700,000 total, later raised by amendment to $800,000.  *Id.*; Ex. 1, § 3.  As a contingency fee, PWT would pay an additional amount to Kalbian in the event of any of three scenarios: (i) early dismissal of SAMA's claim on procedural grounds; (2) dismissal of SAMA's claim after a hearing on the merits; (3) recovery on PWT's counterclaim.  AC ¶ 18; Ex. 1, § 3.  The contingency fee provision reads in full:

|  | Success Fees |
|---|---|
| Defense of SAMA Claim | $100,000 payable within 30 days of SAMA's claims being dismissed on procedural grounds. |
|  | If SAMA's claims are tried on the merits, a success fee of 3.33% of any amount awarded that is less than USD 6 million.  By way of example, an award on the merits resulting in a zero recovery for SAMA would net a success fee of USD 200,000 (3.33% of USD 6 million saved); similarly, a SAMA award of  USD 3 million would net a success fee of USD 100,000 (($6,000,000-$3,000,000 = $3,000,000) * 3.33%). |
| Prosecution of PWT counterclaim (presently estimated at USD 16 million) | 20% of any executed judgment.  This amount shall be paid when the judgment is actually collected. |

Ex. 1, § 3.

The Legal Services Agreement contains a forum-selection clause that identifies different potential jurisdictions for any future dispute between the parties, depending on the scope or nature of such a dispute.  *See* AC ¶ 18; Ex. 1, § 8.  First, it provides that any fee dispute of $5,000 or more that "aris[es] out of the formation, performance, ***interpretation***, nullification, termination, or invalidation of this agreement or arising therefrom or related thereto, in any manner whatsoever, shall be settled exclusively by the courts of Abu Dhabi, U.A.E., under the laws of the U.A.E."  AC ¶ 18; Ex. 1, § 8 (emphasis added).  On the other hand, "if any dispute arises or relates to PWT's failure to make payment as required here or agreed in writing between PWT and the Firm," Kalbian

may bring suit in Germany or "any other jurisdiction that the Firm deems appropriate to seek remedy." AC ¶ 18; Ex. 1, § 8.

###### C.      SAMA's Claim is Dismissed After a Hearing on the Merits

Several months into the arbitration, in October 2018, Kalbian requested that the tribunal bifurcate the proceedings so that the parties could brief the threshold question of whether SAMA's claims, having already been decided in Iraq, were barred by the doctrine of *res judicata*. AC ¶ 22. The tribunal denied the request and elected to consider the *res judicata* question when it reviewed the parties' claims on the merits. *Id.*

On or about March 31, 2019, SAMA filed its statement of claim, reasserting the same claims it asserted in Iraqi courts and sought damages of $9,800,000. AC ¶ 23. After PWT filed its counterclaim for US$88,867,079, calculated by PWT's expert based on the cost of SAMA's delays, SAMA increased its claim to US$44,394,568. *Id.* ¶ 24. Between November 23 and December 3, 2020, a hearing on the merits was held in Istanbul, Turkey. *Id.* ¶ 32. The parties submitted post-hearing briefing. *Id.* ¶ 33.

On or about July 12, 2021, the tribunal issued its award. AC ¶ 34. SAMA's claims were dismissed on *res judicata* and jurisdictional grounds. *Id.* PWT took nothing on its counterclaim.

###### D.      PWT Pays All Fixed Fees Due and Disputes Kalbian's Interpretation of the Legal Services Agreement Regarding Contingency Fees Due

PWT paid Kalbian the total amount provided for in the Legal Services Agreement as a fixed fee for Kalbian's services. AC ¶ 36. By February 1, 2021, PWT had completed payment of the entire $800,000 due under the agreement (as amended). *Id.*

On or about July 22, 2021, Kalbian issued an invoice to PWT for an additional US$1,578,339.11. AC ¶ 37. According to Kalbian, US$1,478,339.11 of the invoiced amount represented 3.33% of the damages sought by SAMA at the hearing (US$44,394,568.00). *Id.* The

remaining US$100,000 represented an amount purportedly owed because SAMA's claim was dismissed on the procedural grounds of *res judicata* and lack of jurisdiction. *Id.*

PWT disagreed with Kalbian's interpretation of the contingency fee provision and contested the invoice. On or about August 30, 2021, PWT sent Kalbian a letter stating that "[b]ased on our understanding, Kalbian Hagerty LLP is not entitled to the USD 100,000 under the first paragraph. PWT only owes your law firm USD 200,000 under the second paragraph of the success fee clause." AC ¶ 41. With respect to the additional $1,278,339.11 Kalbian claimed as a contingency fee, PWT stated that "***we disagree with your interpretation of the LSA***." *Id.* (emphasis added). PWT requested that a new invoice be issued in the $200,000 amount it agreed was due. *Id.*

On the same day PWT emailed Kalbian its letter, Kalbian responded by terminating its client. AC ¶ 42. Thereafter Kalbian began corresponding with PWT's outside counsel in Germany, Heiko Heppner. *Id*. ¶ 43. On or about September 17, 2021, Mr. Kalbian sent Mr. Heppner an email attaching a letter to PWT and a new invoice for the $200,000 PWT had agreed to pay. Regarding the additional $100,000 contingency fee, the letter stated "we understand that PWT is contesting that this amount is owed." *Id*. ¶ 44. The letter further acknowledged that the additional US$1,278,339.11 contingency fee claimed by Kalbian was also a "contested amount." *Id.*

### E.   The Parties Agree to Arbitrate Their Fee Dispute

On September 29, 2021, the parties entered into a Dispute Resolution Agreement. Dispute Resolution Agreement, Sept. 29, 2021, attached as Exhibit 2.[4] The parties acknowledged that "[a]

---

[4] Because the Amended Complaint repeatedly references the Dispute Resolution Agreement, PWT respectfully submits a true and correct copy of the Agreement for the Court's consideration. On a motion to dismiss, a court may consider documents incorporated by

dispute has arisen between the Parties relating to a Legal Services Agreement" and further "agree[d] to resolve all disputes in relation to the LSA in accordance with this dispute resolution agreement." Ex. 2 at Preamble; *id.* § 1. Specifically, the parties "agree[d] to resolve their Dispute in an arbitration proceeding that incorporates certain elements of mediation . . . to resolve their Dispute fairly, quickly, and cost-efficiently." *Id.* § 2. They agreed that the arbitration would take place virtually (via Zoom or another suitable platform) over two days, that the arbitration would proceed in English, that the dispute would be decided under UAE law, that written submissions would be served via e-mail only, and that they would select an arbitrator with "at least a working knowledge of UAE law." *Id.* §§ 2-4. The Dispute Resolution Agreement also provided that the seat of arbitration would be in Paris, France, and that the Agreement itself would be governed by New York law. *Id.* §§ 7-8. The Agreement further outlined the procedure of the arbitration, including the rounds of written submissions, confidential statements, and use of experts. *Id.* § 6.

The Preamble of the Agreement noted that "USD 200,000 is presently due and owing to Kalbian" by PWT, consistent with PWT's prior acknowledgement of that debt in its correspondence with Kalbian. Ex. 2 at Preamble. The $200,000 was to be paid in two installments: $50,000 upon receipt of a copy of the Dispute Resolution Agreement signed by Kalbian and the remaining $150,000 ten days later. *Id.* Under a section titled "Condition Precedent," the Dispute Resolution Agreement provided that "This Agreement will be effective subject to PWT paying the amount of USD 200,000 due under the LSA [Legal Services Agreement] as set forth in the Preamble above. Should PWT fail to make this payment, this Agreement will be deemed void and Kalbian will be permitted to pursue its claim under Clause 8 of the LSA." *Id.* § 11.

---

reference in the complaint and documents upon which the complaint necessarily relies. *Terveer v. Billington*, 34 F. Supp. 3d 100, 110 (D.D.C. 2014).

Kalbian does not dispute that PWT paid in full the $200,000 sum that was due under the Dispute Resolution Agreement.  AC ¶¶ 57, 61.  Although payment of the second installment reached Kalbian a few weeks after the Dispute Resolution Agreement was signed, Kalbian accepted the payment.  *Id*. ¶¶ 47-48.

On December 6, 2021, PWT's counsel contacted Kalbian about moving ahead with the arbitration.  AC ¶ 55.  Over a week later, Kalbian responded and promised Mr. Heppner a substantive reply after the holiday season.  *Id*. ¶ 56.  Instead, Kalbian filed suit in this Court, on January 28, 2022.  Compl., ECF No. 1.  On March 25, 2022, Kalbian filed an Amended Complaint asserting two claims, for breach of contract and quantum meruit, under the law of the United Arab Emirates.  Am. Compl., ECF No. 5.

## LEGAL STANDARD

Forum-selection clauses may be enforced by a motion to dismiss on grounds of *forum non conveniens*.  *See Azima v. RAK Inv. Auth.*, 926 F.3d 870, 874 (D.C. Cir. 2019).  Motions to dismiss are appropriate to enforce forum selection clauses that mandate arbitration, as well as to enforce clauses that specify that actions be brought in certain courts.  *See Dahman v. Embassy of Qatar*, 364 F. Supp. 3d 1, 4 (D.D.C. 2019), *aff'd*, 815 F. App'x 554 (D.C. Cir. 2020) (enforcing arbitration provision in employment agreement by dismissing on grounds of *forum non conveniens*).  "[I]f a 'forum-selection clause is applicable, mandatory, valid, and enforceable, the court must almost always grant [a] motion to dismiss . . . .'"  *D & S Consulting, Inc. v. Kingdom of Saudi Arabia*, 961 F.3d 1209, 1212–13 (D.C. Cir. 2020) (citation omitted) (second alteration in original).  Indeed, "'[a] valid forum-selection clause' is given controlling weight in all but the most exceptional cases." *Id.* at 1212 (citation omitted).

Further, under Rule 12(b)(2), a defendant may move to dismiss an action when the court lacks personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  On such a motion, the plaintiff bears the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  To meet this burden, the plaintiff must allege specific facts that connect the defendant with the forum.  *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).  The plaintiff cannot rely merely on conclusory allegations.  *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003).

## ARGUMENT

The Dispute Resolution Agreement, dated September 29, 2021, reflects the parties' unambiguous intent to have this dispute resolved by arbitration seated in Paris, France and governed by UAE law.  However, even if the Dispute Resolution Agreement were discounted (which it should not be), the parties' earlier Legal Services Agreement provides that any disputes over the "interpretation" of the contingency fee arrangement should be brought in UAE courts. Either way, this Court is not the proper forum for the parties' dispute.

Moreover, separate from the parties' prior agreements that dictate that this Court is not a proper venue for Plaintiff's claims, PWT – incorporated and headquartered in Germany – is not subject to personal jurisdiction in the District of Columbia.  To the extent that Kalbian maintains that the parties' Legal Services Agreement permits it to bring litigation against PWT in any court, including this one, that provision of the Legal Services Agreement is impermissibly vague and unenforceable.  Thus, dismissal is appropriate.

## I.     The Court Should Dismiss Plaintiff's Amended Complaint Because the Parties Agreed Not to Resolve This Dispute in a U.S. Court

### A.     The Parties Agreed to Resolve This Dispute by Arbitration

Once it was clear that the parties disputed the interpretation of the contingency arrangement in the Legal Services Agreement, they entered into a separate Dispute Resolution Agreement, which specifically provided that "The Parties agree to resolve all disputes in relation to the LSA . . . in an arbitration proceeding that incorporates certain elements of mediation . . . to resolve their Dispute fairly, quickly, and cost-effectively." Ex. 2, §§ 1-2. There can be no dispute that this lawsuit – which relates to whether Kalbian is owed an additional $1.37 million on top of the $1,000,000 already paid to it by PWT under the Legal Services Agreement – brings claims that should instead be resolved via arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler– Plymouth, Inc.*, 473 U.S. 614, 625–26 (1985) ("The 'liberal federal policy favoring arbitration agreements' . . . is at bottom a policy guaranteeing the enforcement of private contractual agreements.") (internal quotation and citation omitted).

#### 1.     The Dispute Resolution Agreement Is Valid and Enforceable

The arbitration clause in the Dispute Resolution Agreement is mandatory, applicable, and valid. *See D & S Consulting*, 961 F.3d at 1212–13. The Amended Complaint does not allege that the Dispute Resolution Agreement was entered into by fraud or under duress or coercion. Thus, the Agreement – and its arbitration clause – is presumed valid. *Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 647 N.E.2d 1298, 1302 (N.Y. 1995) ("[I]n the absence of an established ground for setting aside a contractual provision, such as fraud, duress, coercion or

unconscionability, a court must enforce the parties' arbitration agreement according to its terms.").[5]

Notably, Kalbian never alleges that the Dispute Resolution Agreement is void. However, it suggests in the Amended Complaint that PWT failed to comply with a condition precedent to arbitration, namely, that PWT delayed in paying the $200,000 fee that the parties agreed to in the Dispute Resolution Agreement. However, this is no basis to discount the arbitration clause.

First, the "Condition Precedent" section of the Dispute Resolution Agreement does not explicitly require payment within days; it only addresses the consequence of a total failure to pay. Ex. 2, § 11 ("This Agreement will be effective subject to PWT paying the amount of USD 200,000 due under the LSA as set forth in the Preamble above. Should PWT fail to make this payment, this Agreement will be deemed void . . . ."). As Kalbian is forced to concede in its Amended Complaint, PWT did not "fail to make this payment." *Id.*; AC ¶ 57. Instead, PWT paid $200,000 as agreed, leaving only the remaining $1.37 million in dispute to be resolved by arbitration. Thus, as a matter of law, PWT indisputably complied with the terms of the Dispute Resolution Agreement.

Even if Kalbian were correct, though, that PWT's delay of a few weeks in paying the $200,000 "condition precedent" (which, by any event, was paid in full prior to Kalbian filing this lawsuit) constituted a "breach" of the Dispute Resolution Agreement, it does not support voiding the entire agreement and its arbitration clause. That is because a breach by one party does not discharge the other party's contractual obligations unless it amounts to a material breach, one that "'frustrates substantially the purpose for which the contract was agreed to by the injured party.'" *Kriesch v. Vilsack*, 931 F. Supp. 2d 238, 253 (D.D.C. 2013) (quoting *Am. v. Mills*, 714 F. Supp.

---

[5] The Dispute Resolution Agreement is subject to New York law. Ex. 2, § 7.

2d 88, 100 (D.D.C. 2010)).  A purported late payment of an agreed amount cannot amount to material breach unless the contract makes time of the essence.  *Howard Town Ctr. Dev., LLC v. Howard Univ.*, 278 F. Supp. 3d 333, 398 (D.D.C. 2017), *aff'd*, 730 F. App'x 1 (D.C. Cir. 2018). For example, in *Sylvester v. Southwestern Energy Production Co.*, No. 3:CV-09-1653, 2009 WL 3633835, at *1 (M.D. Pa. Nov. 2, 2009), where the agreement lacked a "time is of the essence" clause and defendant's tender of payment was "only a few weeks late," the plaintiff failed to allege material breach.  *See also Planète Bleue Télévision, Inc. v. A&E Television Networks, LLC*, No. 16 CIV. 9317, 2018 WL 10579873, at *14 (S.D.N.Y. Sept. 19, 2018) (dismissing for failure to state a claim where payment made nine days late and plaintiff failed to allege prejudice from any delay).

Here, Kalbian cannot allege that the Dispute Resolution Agreement contains the required "time is of the essence" clause; it indisputably does not.  *See, e.g.*, *Sylvester*, 2009 WL 3633835, at *1.  The essential purpose of the Dispute Resolution Agreement, as alleged and as reflected on the face of the Agreement, was to establish a process for resolving the dispute over the $1.37 million Kalbian claims to be owed, and that purpose was unaffected by the timing of the second installment payment.  *See also In re Abulyan*, BAP No. NV-18-1219, *et al.*, 2019 WL 4745282, at *7 (B.A.P. 9th Cir. Sept. 27, 2019) (holding that time was not of the essence in settlement agreement where late payment did not defeat the agreement's "essential purpose" of avoiding the risks and costs of litigation).  Further, Kalbian's acceptance of PWT's $200,000 payment, which was paid pursuant to PWT's agreement to do so in the Dispute Resolution Agreement, and Kalbian's allegations that PWT repeatedly reaffirmed its commitment to arbitrate, confirms that PWT's delay of a few weeks was not a material breach.

Because the Dispute Resolution Agreement was not materially breached as a matter of law, it continues to bind Kalbian, and it therefore requires dismissal of the Amended Complaint.

> **2.      Any Challenge to PWT's Satisfaction of the "Condition Precedent" to Arbitration under the Dispute Resolution Agreement Must Also Be Decided in Arbitration**

Per the above, the facts as alleged by Kalbian confirm that PWT satisfied all conditions precedent to enforce the arbitration provision of the Dispute Resolution Agreement.  However, if Kalbian disputes whether PWT satisfied the "Condition Precedent" to arbitration in Section 11 of the Dispute Resolution Agreement, New York law confirms that any such dispute must be decided by an arbitrator, not by this Court.

In *Morelli v. Alters*, No. 1:19-CV-10707, 2020 WL 1285513, at *10 (S.D.N.Y. Mar. 18, 2020), the court stated that the plaintiff alleged the defendant "failed to satisfy a condition precedent to arbitration by failing to engage in mediation, but an arbitrator must decide this issue." There, the plaintiff maintained that the parties' failure to attend mediation was a failure of a condition precedent to arbitration such that the defendant could no longer invoke an arbitration clause in the parties' agreement.  But the court concluded that "[t]he issue of whether the parties' failure to mediate frustrated a condition precedent and excuses [plaintiff] from his duty to arbitrate is a question of procedural arbitrability and thus must be determined by an arbitrator."  *Id.*

To the extent Kalbian maintains that PWT failed to comply with a condition precedent to arbitration, and that that alleged failure "voided" the Dispute Resolution Agreement, that only reinforces the need for arbitration because it is a procedural issue to be decided by an arbitrator. *See, e.g., Mobile Real Est., LLC v. NewPoint Media Grp., LLC*, 460 F. Supp. 3d 457, 475–77 (S.D.N.Y. 2020) (collecting cases and finding that the validity of the agreement containing the arbitration clause is "an issue for the arbitrator") (citation omitted); *Rubin v. Sona Int'l Corp.*, 457 F. Supp. 2d 191, 195 (S.D.N.Y. 2006) ("The Supreme Court has recently rejected this distinction,

holding that even where the party resisting arbitration claims that the agreement as a whole is void, 'unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator.'  This principle 'must include contracts that later prove to be void.'") (citation omitted); *Aksman v. Greenwich Quantitative Rsch. LP*, 563 F. Supp. 3d 139, 155 (S.D.N.Y. 2021) (where plaintiff alleged that employment agreement containing arbitration provision "only became effective upon conditions precedent that never occurred," that challenge "was, in the first instance, for the arbitrator to decide"); *Town of Amherst v. Custom Lighting Servs.*, *LLC*, No. 07-CV-261S, 2007 WL 4264608, at *11 (W.D.N.Y. Nov. 30, 2007) ("So it is for an arbitrator to decide whether a party has complied with a grievance procedure, or whether recovery is barred based on a defense such as waiver, time limitation, lack of notice, laches, estoppel or some other condition precedent to an obligation to arbitrate.") (citation omitted); *Havens v. Hartford Fin. Servs. Grp., Inc.*, No. 18 Civ. 488, 2020 WL 1244235, at *9 n.5 (S.D.N.Y. Mar. 13, 2020) ("[C]ourts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration. . . . Procedural preconditions include 'prerequisites such as . . . estoppel [ ] and other conditions precedent to an obligation to arbitrate. . . .'  Accordingly, any dispute about the provision in question would be resolved by the arbitrator.") (internal quotation and citations omitted) (third and fourth alterations in original).

Here, Kalbian has alleged that the parties intended to arbitrate the dispute that Kalbian now seeks to litigate.  Kalbian's only challenge to that agreement – of whether PWT satisfied a condition precedent to arbitration – must be resolved by an arbitrator.  As such, the Amended Complaint should be dismissed with prejudice.

**3.** **Enforcement of the Arbitration Clause is Consistent with the Public Interest**

Because Kalbian's claim is subject to a mandatory, applicable, and valid forum-selection clause, Kalbian, "as the party defying the forum-selection clause," bears the burden to show that proceeding in the pre-selected forum of arbitration is unwarranted. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). Kalbian cannot carry its "heavy burden" to show that this is the "rare" case in which other considerations should override the parties' agreement. *Azima*, 926 F.3d at 879.

Kalbian's private interests in avoiding arbitration are immaterial as a matter of law. By signing the Dispute Resolution Agreement, Kalbian stipulated that arbitration is "adequate to litigate [its] claims and to protect [its] private interests." *D & S Consulting*, 961 F.3d at 1214 (internal quotation and citation omitted). Thus, any "private-interest factors [] weigh entirely in favor of the preselected forum." *Azima*, 926 F.3d at 879. To overcome this clear election of arbitration, Kalbian must show that, "based on the public-interest factors alone, this case should instead proceed here." *Id.*

Enforcement of the Dispute Resolution Agreement is entirely consistent with the public interest. First, "familiarity with the applicable law is . . . part of the public interest inquiry." *Id*. at 880. The Dispute Resolution Agreement identifies the applicable law as UAE law, a body of law with which US courts generally are not familiar, making it all the more appropriate for the parties, as they agreed, to select an "Arbitrator [who] will have at least a working knowledge of UAE law." Ex. 2, § 3. Second, there are no gains in "administrative convenience" or "judicial economy" to resolving the fee dispute in this Court. *D & S Consulting*, 961 F.3d at 1214. To the contrary, the parties agreed to arbitration precisely "to resolve their Dispute fairly, quickly, and cost-efficiently." Ex. 2, § 2. Third, the Court has little interest in hearing this dispute which is

thoroughly international in character and not a "localized controversy" tied to this jurisdiction (or, even, to the United States).  *Haysbert v. Word*, No. CV 20-2152, 2021 WL 254105, at *3 (D.D.C. Jan. 25, 2021).

      **B.**      **Alternatively, the Court Should Dismiss Because the Parties Previously Agreed to Resolve the Fee Dispute in the Courts of the United Arab Emirates**

            **1.**      **The UAE Clause in the Legal Services Agreement is Valid**

Even if Kalbian could avoid the Dispute Resolution Agreement (it cannot), the parties' prior agreement pre-dating the Dispute Resolution Agreement would then control.  In the absence of the Dispute Resolution Agreement, the Legal Services Agreement forecloses Kalbian from litigating the fee dispute in this forum.[6]  *Marra v. Papandreou*, 216 F.3d 1119, 1123 (D.C. Cir. 2000) ("A forum-selection clause is understood not merely as a contract provision, but as a distinct contract in and of itself-that is, an agreement between the parties to settle disputes in a particular forum-that is separate from the obligations the parties owe to each other under the remainder of the contract.").  Either way, dismissal is appropriate.

Section 8 of the Legal Services Agreement broadly provides that any fee dispute of $5,000 or more "arising out of the formation, performance, ***interpretation***, nullification, termination or invalidation of this agreement or arising therefrom or related thereto, in any manner whatsoever, shall be settled exclusively by the courts of Abu Dhabi, U.A.E. under the laws of the U.A.E." (the "UAE Clause").  Ex. 1, § 8 (emphasis added).  Kalbian does not dispute the validity of the Legal Services Agreement; it heavily relies on it in its Amended Complaint.  But by filing suit here it

---

[6] The Legal Services Agreement states on its face that UAE law should govern its interpretation. For purposes of a motion to dismiss, however, Defendant relies on the law of this forum.  *See Azima*, 926 F.3d at 876.

contends that the UAE Clause is either not mandatory or not applicable.  Kalbian is wrong on both counts.

First, the UAE Clause is undeniably mandatory (absent the parties' subsequent agreement to arbitrate).  By dictating that fee disputes arising from the interpretation of the Legal Services Agreement "***shall be settled exclusively*** by the courts of Abu Dhabi, U.A.E" (Ex. 1, § 8) (emphasis added), the UAE Clause "requires that litigation proceed in a specific forum . . . to the exclusion of any other forum."  *D & S Consulting*, 961 F.3d at 1213, 1214 (holding forum-selection clause mandatory where it provided that selected forum "***shall*** be assigned for settlement of any disputes or claims arising from the execution of this cont[r]act, or related to this contract, or resulting from its dissolution") (internal quotation and citation omitted) (emphasis added).

Second, the UAE Clause applies to this type of fee dispute.  The question of whether Kalbian is owed an additional $1.37 million contingency fee "aris[es] out of the . . . interpretation . . . of this agreement," specifically the interpretation of Section 3's contingency fee provision.  In fact, the dispute arises from not one but two separate contract interpretation issues regarding this provision.  AC ¶ 18.  The first contract interpretation issue is whether Section 3 should be interpreted to entitle Kalbian to the $1.27 million fee it claims in connection with the dismissal of SAMA's claims after a merits hearing.  Section 3 provides in relevant part:

> If SAMA's claims are tried on the merits, a success fee of 3.33% of any amount awarded that is less than USD 6 million.  By way of example, an award on the merits resulting in a zero recovery for SAMA would net a success fee of USD 200,000 (3.33% of USD 6 million saved); similarly, a SAMA award of USD 3 million would net a success fee of USD 100,000 (($6,000,000-$3,000,000 = $3,000,000) * 3.33%).

Ex. 1, § 3.  Kalbian reads Section 3 to provide a success fee of 3.33% of any amount of damages sought by SAMA on its dismissed claims.  PWT informed Kalbian that "we disagree with your interpretation of the LSA," because the terms of Section 3 provide "a success fee of 3.33% of any

amount awarded *that is less than USD 6 million*" — *i.e.*, the $200,000 success fee that PWT has already paid Kalbian.  *Id*. § 3 (emphasis added).  Kalbian in turn asserts that based on its interpretation of the agreement, the "[t]he US$6 million figure was never intended to serve as a cap."  AC ¶ 18.

The second contract interpretation issue is whether Section 3 should be interpreted to entitle Kalbian to the extra $100,000 fee it claims in connection with the dismissal of SAMA's claims on procedural grounds.  Section 3 provides for a success fee, in relevant part: "$100,000 payable within 30 days of SAMA's claims being dismissed on procedural grounds."  Ex. 1, § 3.  Kalbian reads the clause to apply in the event that SAMA's claims are dismissed on procedural grounds *at any point* in the arbitration.  PWT, on the other hand, reads the clause to apply only to an early dismissal of SAMA's claims, prior to a hearing on the merits.  On PWT's reading, Kalbian can earn a modest success fee for an early procedural dismissal *or* a larger success fee for dismissal after a merits hearing, but not both.

This Court need not decide either contract interpretation issue.  Because the dispute arises from disagreements over the interpretation of the Legal Services Agreement, the UAE Clause applies and requires dismissal of the Amended Complaint.

## 2.    Enforcement of the UAE Clause is Consistent with the Public Interest

Faced with a second mandatory, applicable, and valid forum-selection clause, Kalbian again bears the heavy burden to show that proceeding in the pre-selected forum is unwarranted. Kalbian cannot carry its burden.  This forum affords no gains in judicial economy or administrative convenience over the courts of the UAE.  And there is no doubt the courts of the UAE are far "better equipped than a United States court to apply [UAE] law, as is required by the contract's choice-of-law provision."  *D & S Consulting*, 961 F.3d at 1214.

### 3. There is No Basis to Enforce The Legal Services Agreement's "Deems Appropriate Clause"

Kalbian's reliance on a minor provision following the UAE Clause to bring suit in this forum is misplaced. Following the UAE Clause, Section 8 of the Legal Services Agreement states that "if any dispute arises or relates to PWT's failure to make payment as required here or agreed in writing between PWT and [Kalbian]," Kalbian may pursue such a claim in the courts of Germany, the UAE, or "any other jurisdiction that [Kalbian] deems appropriate to seek remedy." Ex. 1, § 8 (the "Deems Appropriate Clause"). That clause has no application here.

By its terms, the Deems Appropriate Clause applies to fee disputes involving non-payment of a sum certain that PWT has acknowledged in writing is due and owing. Had PWT refused to pay the $700,000 fixed fee it agreed to pay in the Legal Services Agreement, or the additional $100,000 fixed fee it agreed to pay in an amendment to the Legal Services Agreement, or the $200,000 contingency fee it agreed to pay in the Dispute Resolution Agreement, the associated fee dispute might have been suitable for resolution under the Deems Appropriate Clause. But the undisputed fact, as alleged in the Amended Complaint, is that PWT has already paid Kalbian the $1,000,000 in fees that PWT agreed were due and owing. *See* AC ¶¶ 36, 57. The remaining fee dispute is different in kind; it involves not a sum certain but two "contested amounts" that are in dispute due to the parties' conflicting interpretations of their agreement. *See id*. ¶ 44. The UAE Clause therefore controls.[7]

---

[7] Kalbian's assertion that the Deems Appropriate Clause and not the UAE Clause applies here also is wrong because it impermissibly "sets up the two clauses in conflict with one another." *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 63–64 (1995). The two clauses can be "harmonize[d]" only by reading the UAE Clause to cover fee disputes involving contract interpretation of contested amounts and the second clause to cover fee disputes involving non-payment of uncontested amounts. *Id*. Then "neither sentence intrudes upon the other" and both are given effect. *Id*.

Moreover, it is well-accepted that terms like the Deems Appropriate Clause, which purport to broadly allow a party to file suit anywhere in the world, are unenforceable.  *See, e.g., Gordian Grp., LLC v. Syringa Expl., Inc*., 168 F. Supp. 3d 575, 581–83 (S.D.N.Y. 2016) (forum selection clause was "impermissibly vague" where it permitted litigation "'in any court' Plaintiff may select") (citation omitted); *Redrock Trading Partners, LLC v. Baus Mgmt. Corp*., No. CV 113-043, 2014 WL 5106998, at *3 (S.D. Ga. Oct. 10, 2014) (forum selection clause was insufficient where it provided for jurisdiction in Quebec and Canada and any federal court).  Rather than provide certainty and predictability as to where litigation may occur, such clauses introduce more uncertainty, undermining the very policy that favors enforcement of forum selection clauses.[8]  *Conopco, Inc. v. PARS Ice Cream Co*., No. 13 Civ. 1083, 2013 WL 5549614, at *5 (S.D.N.Y. Sept. 26, 2013); *Gordian Grp*., 168 F. Supp. 3d at 582.  Thus, there is no basis to enforce the Deems Appropriate Clause to the exclusion of the UAE Clause (or to the arbitration provision in the Dispute Resolution Agreement).

This Court should decline to enforce the Deems Appropriate Clause here because it is preceded by other contractual terms and because it is enforceable as a matter of law.

## II.   The Court Should Dismiss for Lack of Personal Jurisdiction

Even setting aside the two forum-selection clauses that mandate resolution of this dispute by another body, dismissal is warranted because PWT is not subject to personal jurisdiction in the District of Columbia.[9]  A court may exercise personal jurisdiction over a non-resident defendant

---

[8] Also, the Deems Appropriate Clause is not a mandatory forum selection clause because it does not use binding language, like the term "shall."  *D & S Consulting*, 961 F.3d 1209.  This illustrates the difference between the mandatory UAE Clause and the non-mandatory (and unenforceable) Deems Appropriate Clause.

[9] The fact that PWT is not subject to personal jurisdiction in this Court reinforces why dismissal is appropriate in favor of arbitration in Paris, France or, if the Dispute Resolution Agreement is inapplicable, of litigation in UAE.

only when it has sufficient contacts with the forum to satisfy the strictures of the Due Process Clause. *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (citing D.C. Code § 13–423). The Amended Complaint has not alleged D.C. contacts by PWT sufficient to support either general "all-purpose" jurisdiction or case-specific jurisdiction.

PWT is not subject to general personal jurisdiction in the District because it lacks the kind of "continuous and systematic" contacts that would render it "essentially at home" here. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted). A corporation is generally at home in only two places, where it is incorporated and where it maintains its principal place of business. *Id*. at 137. Because Kalbian alleges that PWT is incorporated in Germany and also maintains its principal place of business there (AC ¶ 3), there is no basis for general jurisdiction over PWT.

PWT is not subject to specific personal jurisdiction in the District because the Amended Complaint fails to allege "minimum contacts" showing "that [PWT] purposefully availed [itself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Thompson Hine*, 734 F.3d at 1189 (internal quotations and citation omitted). The Amended Complaint merely alleges that PWT contracted with a D.C.-based law firm and that that firm performed legal work for PWT from both its D.C. and Abu Dhabi offices for matters being litigated overseas. AC ¶ 20. But "[a] non-resident's mere retention of a D.C.-based service provider, absent any other deliberate contact with the forum—demonstrated either by the terms of the contract itself or by the non-resident's actual dealings with the District—cannot qualify as a minimum contact." *Thompson Hine*, 734 F.3d at 1194 (citation omitted). Here, the Amended Complaint alleges no actual dealings by PWT with the District; it is not even alleged to have ever visited Kalbian's offices in D.C.: all dealings were allegedly over the phone or by email. *See, e.g.*, AC ¶¶ 11, 14. Nor do the terms of the Legal Services Agreement "constitute an

invocation by the nonresident of the benefits and protections of the District's laws." *Thompson Hine*, 734 F.3d at 1194 (internal quotations and citation omitted).  Section 8 of the Legal Services Agreement expressly provides that any disputes arising under thereunder shall be resolved "under the laws of the U.A.E."  Ex. 1, § 8.

Kalbian's contention that PWT "consented to jurisdiction" in the Legal Services Agreement (AC ¶ 5) is conclusory and need not be credited.  Kalbian relies on the minor clause in Section 8 providing that Kalbian may pursue a claim arising from non-payment of a sum certain "in any . . . jurisdiction that the Firm deems appropriate to seek remedy."  Ex. 1, § 8.  But, as noted above, clauses like that which force one party to submit to suit anywhere in the world are unenforceable.

Because the consent to jurisdiction clause Kalbian relies on is unenforceable and PWT is not subject to personal jurisdiction in the District, dismissal on this additional basis is warranted.

## III.   Request For Oral Hearing

Pursuant to D.D.C. L.R. 7(f), Defendant PWT respectfully requests that this Court hold an oral hearing on its Motion to Dismiss.

## CONCLUSION

For these reasons and because PWT's failures in pleading cannot be remedied by another amendment, PWT respectfully requests that the Court grant its motion and dismiss the Amended Complaint with prejudice.

Dated August 2, 2022

Respectfully submitted,

By *: /s/ Alanna G. Clair*

Alanna G. Clair (Bar No. 986460)

- 22 -

DENTONS US LLP
1900 K Street, N.W.
Washington, D.C. 20006
alanna.clair@dentons.com
(202) 496-7668

*Counsel for Defendant PWT*
*WASSER- UND*
*ABWASSERTECHNIK GmbH*